STATE EX REL. HERGET, Petitioner, v. CIRCUIT COURT FOR WAUKESHA COUNTY, Honorable Clair Voss, Presiding, and others, Respondents.

*No. OA–293. Submitted December 7, 1977.—Decided June 30, 1978.*
(Also reported in 267 N.W.2d 309.)

436

For petitioner: *Steve Haligas* and *Patrick & Hurt* of Menomonee Falls.

For respondents: *Richard H. Schulz* and *Petrie, Stocking, Meixner & Zeisig, S.C.* of Milwaukee.

SHIRLEY S. ABRAHAMSON, J.  James J. Herget, a minor, by his guardian *ad litem,* has petitioned this court for a writ of prohibition ordering the circuit court for Waukesha county to cease further proceedings in a civil action for damages brought against Herget and his parents by Curtis and Judith Klade and their insurer. Herget predicates his petition upon the contention that information concerning a crime allegedly committed by a juvenile is privileged within the meaning of secs. 804.01 (2)(a),[1] 48.26[2] and 48.38,[3] Stats. and thus not discover-

---

[1] Sec. 804.01(2)(a), Stats., provides "parties may obtain discovery regarding any matter, *not privileged,* which is relevant to the subject matter involved . . . ." (Emphasis added.)

[2] Sec. 48.26, Stats., provides:

"48.26  Records. (1) Peace officers' records of children shall be kept separate from records of persons 18 or older and shall not be open to inspection or their contents disclosed except by order of the court. This subsection shall not apply to the representatives of newspapers or other reporters of news who wish to obtain information for the purpose of reporting news without revealing the identity of the child involved or to the confidential exchange of information between the police and officials of the school attended by the child or other law enforcement or social

able in a civil action for damages arising from the juvenile's allegedly criminal conduct.

welfare agencies or to children 16 or older who are transferred to the criminal courts.

"(2) Juvenile court records shall be entered in books or deposited in files kept for that purpose only. They shall not be open to inspection or their contents disclosed except by order of the court.

"(3) This section shall not apply to proceedings for violation of chs. 340 to 349 or any county or municipal ordinance enacted under ch. 349."

Sec. 47, ch. 354, Laws of 1977, renumbered sec. 48.26 to be sec. 48.396 and amended sec. 48.26(1) to read as follows:

"48.396(1)  Peace officers' records of children shall be kept separate from records of persons 18 or older and shall not be open to inspection or their contents disclosed except by order of the court or according to s. 48.293. This subsection shall not apply to the representatives of newspapers or other reporters of news who wish to obtain information for the purpose of reporting news without revealing the identity of the child involved or to the confidential exchange of information between the police and officials of the school attended by the child or other law enforcement or social welfare agencies or to children 16 or older who are transferred to the criminal courts."

Sec. 51, ch. 354, Laws of 1977 created sec. 48.293 to read:

"48.293  Discovery.  (1) Copies of all peace officer reports, including but not limited to the officer's memorandum and witnesses' statements, shall be made available upon request to counsel or guardian ad litem prior to a plea hearing. The reports shall be available through the representative of the public designated under s. 48.09. The child, through counsel or guardian ad litem, is the only party who shall have access to the reports in proceedings under ss. 48.12, 48.125 and 48.13(12). The identity of a confidential informant may be withheld pursuant to s. 905.10.

"(2) All records relating to a child which are relevant to the subject matter of a proceeding under this chapter shall be open to inspection by a guardian ad litem or counsel for any party, upon demand and upon presentation of releases where necessary, at least 48 hours before the proceeding. Persons entitled to inspect the records may obtain copies of the records with the permission of the custodian of the records or with permission of the court. The court may instruct counsel not to disclose specified items in the materials to the child or the parent if the court reasonably believes

## I.

As described in the petition and briefs before this court, the amended complaint in the civil action alleges

that the disclosure would be harmful to the interests of the child. Sections 971.23 to 971.25 shall be applicable in all delinquency proceedings under this chapter except the court shall establish the timetable for s. 971.23(3) and (8)."

[3] Sec. 48.38, Stats., provides:

"48.38  Effect of Juvenile court proceedings.  (1) No adjudication upon the status of any child in the jurisdiction of the juvenile court shall operate to impose any of the civil disabilities ordinarily imposed by conviction, nor shall any such child be deemed a criminal by reason of such adjudication, nor shall such adjudication be deemed a conviction.  The disposition of any child's case or any evidence given in the juvenile court shall not be admissible as evidence against the child in any case or proceeding in any other court, nor shall such disposition or evidence disqualify a child in any future civil service examination, appointment or application.

"(2) Nothing contained in this section shall be construed to preclude the juvenile court, under circumstances other than those specifically prohibited in sub. (1), from disclosing information to qualified persons if the court considers such disclosure to be in the best interests of the child or of the administration of justice."

Sections 59, 62 and 63, ch. 354, Laws of 1977, renumbered sec. 48.38 to be sec. 48.35 and amended sec. 48.38(1) to read as follows:

"48.35  Effect of judgment and disposition.  (1) The judge shall enter a judgment setting forth his or her findings and disposition in the proceeding.

"(a) A judgment in proceedings on a petition under this chapter shall not be deemed a conviction of a crime, shall not impose any civil disabilities ordinarily resulting from the conviction of a crime and shall not operate to disqualify the child in any civil service application or appointment.

"(b) The disposition of a child, and any record of evidence given in a hearing in court, shall not be admissible as evidence against the child in any case or proceeding in any other court after the child reaches majority except in sentencing proceedings after conviction of a felony and then only for the purpose of a presentence study and report.

"(c) Disposition by the juvenile court of any allegation under s. 48.12 shall bar any future proceeding on the same matter in criminal court when the child reaches the age of 18. This para-

that in July 1974, Herget and another minor vandalized the Klades' residence, causing damages in excess of $30,000. This incident was the subject of a juvenile court proceeding. The complaint further alleges that the damage was the result of the intentional acts of Herget and the negligence of his parents[4] and that each is liable for damages; that punitive damages in the amount of $75,000 should be recovered against Herget; and that Herget's parents are liable for damages in accordance with sec. 895.035, Stats.[5] Herget answered by his guardian *ad litem,* denying all of the allegations of the amended complaint.

graph does not affect proceedings in criminal court which have been transferred under s. 48.18.

"(d) A child adjudged to be delinquent may not be proceeded against under ch. 54.

"(e) If a child is found to be not responsible by reason of mental disease or defect the petition shall be dismissed with prejudice."

[4] The alleged negligence appears to be the parents' failure to supervise the child.

[5] Sec. 895.035, Stats., provides:

"Parental liability for acts of minor child. (1) The parent or parents having legal custody of an unemancipated minor child, in any circumstances where he or they may not be otherwise liable under the common law, shall be held liable for damages to property or for personal injury attributable to a wilful, malicious or wanton act of the child not to exceed $1,000, in addition to taxable costs and disbursements directly attributable to any wilful, malicious or wanton act of the child.

"(2) Maximum recovery from any parent or parents of any child may not exceed the limitation provided in sub. (1) for any one wilful, malicious or wanton act of such child and if 2 or more children of the same parent or parents having legal custody commit the same act the recovery may not exceed in the aggregate $1,000, in addition to taxable costs and disbursements.

"(3) This section shall not limit the amount of damages recoverable by an action against the child or children except that any amount so recovered shall be reduced and apportioned by the amounts received from the parent or parents under this section."

On September 17, 1976, the plaintiffs deposed Herget and the City of Brookfield police officer who had investigated the alleged vandalism. The police officer, on the advice of the Waukesha County District Attorney's office, refused to reveal the contents of the pertinent juvenile police records. Herget, by his guardian *ad litem,* refused to make any statement concerning the alleged vandalism.

On November 29, 1976, Herget moved the circuit court for a protective order suppressing the September 17, 1976 depositions and directing that Herget not be deposed further. Although the circuit court ordered that the original transcript of the police officer's deposition be sealed and not opened without further court order, it declined to prohibit the taking of further depositions. The court's order stated that if the investigating officer were again deposed, the contents of the police department's investigative file would be discoverable. The order further stated that transcripts of depositions containing matter damaging to Herget's reputation were to be sealed and not opened without court order.

On January 6, 1977, on Herget's motion, the juvenile court of Waukesha county issued the following order:

". . . the Chief of Police of the City of Brookfield, Waukesha County, Wisconsin, shall seal the records concerning the above-named juvenile and shall not allow any person to examine, reveal, testify from, or in any way expose said records without proper application to and further Order of this Court."[6]

There is nothing in the record to indicate whether the county court judge was aware that the circuit court had

[6] At the foot of this order is the following statement: "Further proceedings in this matter on the question of whether the temporary injunction herein shall be made permanent will be heard at 9:00 a.m. on February 7, 1977 or as soon thereafter as counsel can be heard." The papers before us do not reveal whether these further proceedings took place.

held that the police department records were subject to discovery.

A pretrial conference in the civil suit was held in June 1977. Following the conference, the circuit court issued a pretrial order which provided that on discovery, Herget must answer all questions relevant to the incident which gave rise to the criminal investigation and the civil action. The order stated that the transcript of this deposition must be impounded by the court to permit "an inspection in camera to determine the validity of any objections of counsel at which time a determination will be made as to the admissibility of the aforementioned testimony." The pretrial order reiterated the circuit court's earlier determination that the police officer may be deposed and that the records of the Brookfield Police Department pertaining to the incident which is the basis for the civil litigation are discoverable. The order further stated that any discovery obtained at the deposition of the police officer "if objected to on the grounds of privileged information on behalf of the minors shall be certified to the [circuit] court herein for determination as to the validity of said objections and admissibility therein." As to the discovery of the police records, the court ruled that "any objections to their admissibility based upon privileged information shall be certified to this court and an in camera inspection to determine the validity of said objections at which time a determination will be made as to the admissibility of said testimony and physical evidence."

After the pretrial order was issued, the plaintiffs scheduled a deposition of the police officer. This petition for a writ of prohibition followed.

## II.

Pointing to sec. 48.38(1), Stats., Herget argues that he cannot be ordered to disclose any information relating

to the vandalism alleged in the plaintiffs' complaint because any such information would duplicate his testimony in the juvenile court proceeding. Section 48.38(1) provides, in pertinent part:

". . . The disposition of any child's case or any evidence given in the juvenile court shall not be admissible as evidence against the child in any case or proceeding in any other court . . . ."

The Children's Code was not intended to thwart the processing of a civil claim arising out of conduct which was also made the subject of a juvenile court proceeding. In the recent case of *Sanford v. State*, 76 Wis.2d 72, 250 N.W.2d 348 (1977), this court rejected the contention that sec. 48.38(1) restrains a witness from testifying at trial as to an alleged prior act of the defendant, committed while the defendant was a juvenile, if that act gave rise to a juvenile court proceeding. We noted that the testimony admitted in the trial in question was testimony of the victim herself and not a record or transcript of any juvenile court proceeding or the disposition of a juvenile adjudication.

It is well established in Wisconsin that a juvenile is liable for his or her torts.[7] Plaintiffs' right to sue Herget

---

[7] *Paradies v. Woodard*, 156 Wis. 243, 145 N.W. 657 (1914); *Wisconsin Loan v. Goodnough*, 201 Wis. 101, 228 N.W. 484, 67 A.L.R. 1259 (1930); *Clark v. Corby*, 75 Wis.2d 292, 249 N.W.2d 567 (1977) (complaint against minor dismissed for reasons unrelated to his minority).

*See* 1955 Report, Wisconsin Legislative Council Conclusions and Recommendations of the Trial Welfare Committee, Vol. VI, Part II, p. 40, in which it is stated that a child is responsible for his torts. At p. 23 of the same report, a proposal for a statute holding parents liable for vandalism committed by their children is discussed. Although the Council declined to recommend passage of such a bill, the committee recommended that the juvenile court judge be given the power to order restitution by a juvenile for

for his alleged tort embodies discovery rights. The circuit court's discovery order is properly limited in scope. It permits plaintiffs to question Herget regarding the facts of the incident, but does not authorize questions concerning the proceedings or disposition in juvenile court. Accordingly, we decline to prohibit enforcement of that portion of the pretrial order making the juvenile subject to discovery and ordering him to answer questions relevant to the incident of vandalism.

## III.

Herget argues that the Waukesha County Juvenile Court ordered the police records relating to Herget's alleged vandalism sealed and that the circuit court is without authority to override the juvenile court's order. He contends that secs. 48.26(1), 48.02(2), 48.03(1) and 253.13, read together, vest in the county court which hears cases arising under ch. 48 the exclusive authority to determine whether police records relating to juveniles may be disclosed.

Section 48.26(1) provides, in pertinent part:

damage intentionally done to the property of another. This recommendation was accepted by the legislature. Sec. 48.34(1)(e), Stats. Nothing in the report suggests that juveniles should be immune from suit for their torts or from payment of damages.

Sec. 48.39, Stats., provides that the disposition by the juvenile court bars future criminal proceedings on the same matter. The statute is silent as to civil proceedings. *See also* sec. 48.35, as amended, sec. 59, C. 354, Laws of 1977. *See also* sec. 48.32(4), created by sec. 55, C. 354, Laws of 1977, relating to consent decrees which provides: "No child who is discharged by the court or who completes the period of supervision without reinstatement of the original petition may again be proceeded against in any court for the same offense alleged in the petition or an offense based on the same conduct, and the original petition shall be dismissed with prejudice. Nothing in this subsection precludes a civil suit against the child or parent for damages arising from the child's conduct."

"48.26 Records. (1) Peace officers' records of children shall be kept separate from records of persons 18 or older and shall not be open to inspection or their contents disclosed except by order of the court. . . ."

Section 253.13, Stats., vests exclusive jurisdiction of all proceedings under ch. 48 in the county court and sec. 48.03 (1) provides that when a county court hears cases arising under ch. 48, the court is known as the juvenile court.[8] Section 48.02 (2) further provides that "court," as used in the Children's Code, ch. 48, Stats., "means the juvenile court unless otherwise specified in the section."[9] Thus Herget concludes that sec. 48.26 (1) requires an order of the county court sitting as the juvenile court to release the police records.

Although the statutes might be read as supporting Herget's contention,[10] in the interest of fostering the

[8] As a result of the new trial court reorganization, ch. 449 (June 1978 Special Session, Senate Bill 1), Laws of 1977, when we use the term circuit court in this opinion we mean a circuit court not assigned to exercise jurisdiction under chapter 48.

[9] Sec. 48.02(2) was renumbered sec. 48.02(2m), sec. 3, C. 354, Laws of 1977, and was amended by sec. 80, C. 449 (June 1978 Special Session, Senate Bill 1), Laws of 1977, to read as follows:

"48.02 (2m) 'Court,' when used without further qualification, means the court assigned to exercise jurisdiction under this chapter [48]."

Sec. 253.13, Stats., was renumbered sec. 754.13, Stats., by sec. 93, C. 187, Laws of 1977 and was repealed by sec. 329, C. 449 (June 1978 Special Session, Senate Bill 1), Laws of 1977.

[10] A field study conducted by the Center for Public Representation indicates that persons seeking access to juvenile records contact the juvenile court. Krueger, *Juvenile Records in Wisconsin*, in *Contemporary Problems in Juvenile Records* (Center for Public Representation, 2d Printing, March 1977).

We have construed the word "court" as used in sec. 48.78, Stats. as meaning "juvenile court." *Hammill v. State*, 52 Wis.2d 118, 120, 187 N.W.2d 792 (1970); *Adoption of Brown*, 5 Wis.2d 428, 441, 92 N.W.2d 749 (1958).

fair and efficient administration of justice we hold that the circuit court has the power to order disclosure of the police records. A procedure is required by which a court which is familiar with both the civil action and the juvenile police records controls disclosure of those records. The circuit court in which the civil action is pending is already knowledgeable regarding the civil suit. When the issues of discovery and admissibility of juvenile police records arise, which may occur at different stages of the proceeding, the circuit court can read the juvenile records in issue and weigh the interests of the parties and the public. While we recognize that the juvenile court would have ready access to the police records, we are concerned that it would not be sufficiently familiar with the civil proceeding. The work of both juvenile and circuit courts might be repeatedly disrupted if the

---

We have also commented in previous cases that an order of the juvenile court is required to release records of the juvenile court (sec. 48.38, Stats.) and records kept by social service agencies (sec. 48.78, Stats.) and which were sought in a criminal action. *State v. Miller*, 35 Wis.2d 454, 151 N.W.2d 157 (1967); *Banas v. State*, 34 Wis.2d 468, 149 N.W.2d 571 (1967), *cert. denied* 389 U.S. 962.

*Banas* and *Miller* can be distinguished from the case at bar. Neither case deals with the question of the power of the circuit court to release a juvenile's police records in the context of a civil case arising from the incident which was the subject of the juvenile court proceedings. Both *Miller* and *Banas* are criminal cases, in which the nature and scope of the disclosure requested was significantly different than that involved in the case at bar. In *Miller* and *Banas* the juvenile whose records were sought was a witness, not a defendant. Thus the records did not of necessity permeate the entire cause of action. The request for records in *Banas* came at a single stage of the trial proceedings and the records were to be used for a limited purpose, namely, impeachment of the witness. In *Miller*, the request for records was part of pre-trial discovery to obtain information to impeach the complaining witness, but the court refused to allow pretrial discovery in a criminal case.

juvenile court were required to rule on disclosure. The circuit court can more efficiently deal with requests for disclosure in the various contexts in which they may be made.

## IV.

Herget contends that the police records plaintiffs seek to discover are privileged reports within the meaning of secs. 905.01 and 905.02, Stats., and that the order directing their disclosure is therefore improper. Section 905.01, Stats. provides:

"905.01 Privileges recognized only as provided. Except as provided by or inherent or implicit in statute or in rules adopted by the supreme court or required by the constitution of the United States or Wisconsin, no person has a privilege to:
" (1) Refuse to be a witness; or
" (2) Refuse to disclose any matter; or
" (3) Refuse to produce any object or writing; or
" (4) Prevent another from being a witness or disclosing any matter or producing any object or writing."

Section 905.02, Stats. provides:

"905.02 Required reports privileged by statute. A person, corporation, association or other organization or entity, either public or private, making a return or report required by law to be made has a privilege to refuse to disclose and to prevent any other person from disclosing the return or report, if provided by law. A public officer or agency to whom a return or report is required by law to be made has a privilege to refuse to disclose the return or report if provided by law. No privilege exists under this section in actions involving false swearing, fraudulent writing, fraud in the return or report, or other failure to comply with the law in question."

The Wisconsin Judicial Council Committee's Note to sec. 905.02 indicates that it was the legislature's intent to include within the scope of "required reports privileged by statute" police reports such as those here at issue. The Note states, in pertinent part:

"...

"Illustrative of the statutes that are the subject of this section are the following:

"S. 48.26—Peace officer's records concerning children under 18. . . ." Sec. 905.02, Judicial Council Committee Note, 59 Wis.2d R110 (1973).

Although the juvenile police records which are the subject of sec. 48.26, Stats., are privileged records by virtue of sec. 905.02, Stats., they are not absolutely privileged and hence are discoverable in limited circumstances. *Cf. Davis v. Alaska*, 415 U.S. 308 (1974). As sec. 48.26(1) itself provides, "[p]eace officers' records of children . . . shall not be open to inspection or their contents disclosed *except by order of the court.*" [Emphasis added.] Sec. 905.02, Stats. necessarily incorporates that part of sec. 48.26(1) which permits police records to be disclosed by order of the court as well as that part of the section which provides that police records shall not be otherwise disclosed. The question before us, therefore, is under what circumstances the court may properly order discovery of the police reports of Herget's alleged vandalism.

While section 48.26, Stats. does not prescribe the standards the court should apply in determining whether to order the disclosure of all or any part of the police records of a juvenile investigation, other provisions of ch. 48, Stats. suggest that the interests of the juvenile must be given paramount consideration. Section 48.01 (2), Stats. declares that it is the intent of ch. 48, Stats. "to promote the best interests of the children of this state," and sec. 48.01(3), Stats. provides:

"(3) CONSTRUCTION. This chapter shall be liberally construed to effect the objectives in sub. (2). The best interests of the child shall always be of paramount consideration, but the court shall also consider the in-

terest of the parents or guardian of the child and the interest of the public."

The contents of some police records may closely approximate the contents of the records of juvenile court proceedings.[11] Section 48.38(2) provides that the court may disclose information regarding juvenile court proceedings if disclosure is "in the best interests of the child or the administration of justice."

Sections 48.26, 48.38, and 48.78,[12] Stats., which mandate confidentiality of records as the general principle and disclosure as the exception, express the legislature's

---

[11] Studies in Wisconsin and elsewhere indicate that police records relating to an alleged crime by a juvenile can contain extensive information about the incident and the juvenile and that the police records are often more extensive than the records of the juvenile court or social agencies. Indeed, when the decision is made to refer a juvenile for adjudication, it appears that police records may be prepared in anticipation of the litigation before the juvenile court to assist in understanding the juvenile's total personality and social background as relevant to rehabilitation. *See* Krueger, *Juvenile Records in Wisconsin* 30, 31, in Contemporary Problems in Juvenile Records (Center for Public Representation, March 1977); Note, *Juvenile Delinquents: The Police State, and Individualized Justice,* 79 Harv. L. R. 775, 789 (1966); Coffee, *Privacy versus Parens Patriae: The Role of Police Records in the Sentencing & Surveillance of Juveniles,* 57 Corn. L. R. 571, 589, n. 64 (1972); Dawson, *Sentencing: The Decision as to Type, Length, and Conditions of Sentence* 28–30 (1969); Symposium, *The Federal Rules of Evidence; Admissibility of Police Reports Under Federal Rules of Evidence,* 71 Nw. U.L.R. 691 (1976).

[12] Sec. 48.78, Stats., provides:

"48.78 Confidentiality of records. Records kept or information received by the department, county agencies specified in s. 48.56, licensed child welfare agencies, licensed day care centers and licensed maternity hospitals regarding individuals in their care or legal custody shall not be open to inspection or their contents disclosed except by order of the court. This section does not apply to the confidential exchange of information between these agencies or other social welfare or law enforcement agencies regarding individuals in the care or legal custody of one of the agencies."

determination that the best interests of the child and the administration of the juvenile justice system require protecting the confidentiality of police, court and social agency records relating to juveniles.

Confidentiality is essential to the goal of rehabilitation, which is in turn the major purpose of the separate juvenile justice system. In theory, the role of the juvenile court is not to determine guilt or to assign fault, but to diagnose the cause of the child's problems and help resolve those problems. The juvenile court operates on a "family" rather than a "due process" model.[13] Confidentiality is promised to encourage the juvenile, parents, social workers and others to furnish information which they might not otherwise disclose in an admittedly adversary or open proceeding.[14] Confidentiality also reduces the stigma to the youth resulting from the misdeed, an arrest record and a juvenile court adjudication.[15]

In view of the statutory expression of the strong public interest in promoting the best interests of the child and the administration of the juvenile justice system by protecting the confidentiality of police, court, and social agency records relating to juveniles, we hold that the

---

[13] Despite *In re Gault*, 387 U.S. 1 (1967), this theory and function of juvenile proceedings persists. Simpson, *Rehabilitation as the Justification of a Separate Juvenile Justice System*, 64 Cal. L. Rev. 984 (1976); McCarthy, *The Role of the Concept of Responsibility in Juvenile Delinquency Proceedings*, 10 U. Mich. J. of Law Reform 181 (1977).

*See also Winburn v. State*, 32 Wis.2d 152, 158, 145 N.W.2d 178 (1966).

[14] *Cf.* Federal Advisory Committee's Notes, sec. 905.02, Stats., 59 Wis.2d R110 (1973).

[15] Bazelon, *Racism Classism and the Juvenile Process*, 53 Judicature 373 (1970); Mahoney, *The Effect of Labeling Upon Youths in the Juvenile Justice System: A Review of the Evidence*, 8 Law and Society 583 (1974); Spalt, *Juvenile Police Record-Keeping*, 4 Colum. Human Rts. L. Rev. 461, 462 (1972); In *re Smith*, 310 N.Y.S.2d 617 (1970).

circuit court is justified in ordering the discovery of all or any part of sec. 48.26 records only when the court has reviewed the records *in camera* and has made a determination that the need for confidentiality is outweighed by the exigencies of the circumstances.

In the case at bar, the circuit court ordered discovery of the "records of the Brookfield police department pertaining to the alleged crimes." The order is disapproved.

Before the trial court can issue an order subjecting all or any part of the police records at issue to discovery, the court must balance the plaintiffs' need for the information requested against society's interest in protecting the confidentiality of juvenile police records.

So that the court may determine plaintiffs' need for the information requested, the plaintiffs must describe to the court as specifically as possible the type of information they seek, the basis of their belief that the information is contained in the police records, the relevance of the information to plaintiffs' cause of action, the probable admissibility of the information as evidence at trial, the efforts they have made to obtain the information from other sources, and the hardship to plaintiffs' cause should the discovery order not issue. The defendant should be given the opportunity to present to the court its position concerning disclosure of all or part of the records.[16]

---

[16] Because the juvenile's identity is known to the plaintiffs and the facts of the incident are public knowledge does not justify the release of the entire police records which may contain personal and family information not of public knowledge. Nor does the fact that the information will be used against the parents, rather than against the child, diminish the basic concern regarding confidentiality. In a juvenile proceeding it is difficult if not impossible to separate the issues pertaining to the child from

■■■■■■■■■■■■■■■■■■■■■■■■

The court must then make an *in camera* inspection of Herget's police file.

■■■

If the court determines that certain information contained in Herget's police file is essential to plaintiffs' cause and cannot be obtained with reasonable effort from other sources, the court must then determine whether plaintiffs' need for that information outweighs society's interest in protecting its confidentiality. In making this determination the circuit court must balance two private and two societal interests: the victim's interest in recovering for the damage he has suffered and the juvenile's interest in rehabilitation and in avoiding the stigma of revelation; the redress of private wrongs through private litigation and the protection of the integrity of the juvenile justice system.

If, after balancing these interests, the circuit court determines that certain information should be disclosed, the court must carefully tailor its discovery order to permit disclosure of only that information.[17] The trial court shall make a record of the reasons for its determination to allow or not to allow discovery, and the record shall be sealed.[18]

those pertaining to the family unit. Even if the information may affect the parents' civil liability, it is the child and the juvenile justice system which would inevitably be prejudiced by revealing the peace officer's records.

[17] *In the Interest of D.H.*, 139 N.J. Sup. 330, 353 A.2d 570 (1976); *In the Interest of S.F.*, 139 N.J. Sup. 337, 353 A.2d 573 (1976); *In the Interest of A.S.*, 130 N.J. Sup. 388, 327 A.2d 260 (1974); *Barnett v. Police Dept. of County of Nassau*, 47 A.D.2d 655, 364 N.Y.S.2d 186 (1975); *Parsons v. Smithy*, 109 Arizona 49, 504 P.2d 1272, 54 A.L.R.3d 974 (1973).

[18] We have, on other occasions, imposed on the trial court the obligation of conducting an *in camera* review of records to determine whether the public interest requires their release. *See Stelloh v. Liban*, 21 Wis.2d 119, 128, 124 N.W.2d 101 (1963); *State v. Richards*, 21 Wis.2d 622, 633, 124 N.W.2d 684 (1963); *State ex rel.*

## V.

Pointing to his claim that the police records plaintiffs seek to discover are privileged reports and thus not discoverable, Herget argues that the police officer whose report the records contain cannot be deposed.

As we have noted, sec. 48.26, Stats. provides that "[p]olice officers' records of children . . . shall not be open to inspection or their contents disclosed except by order of the court. . . ." Because we believe it violative of the intent of sec. 48.26, Stats. to distinguish between the officer who made the report and the report itself, we hold that the police officer who investigated the alleged vandalism may not be deposed until the circuit court has determined, pursuant to the criteria listed above, whether any portion of the police records may be disclosed. The police officer may be questioned only about those portions of the record which the circuit court has held subject to discovery.

*By the Court.*—Writ requested denied. The circuit court is directed to prohibit discovery except in accordance with the procedure set forth in this opinion.

*Youmans v. Owens*, 28 Wis.2d 672, 137 N.W.2d 470 (1965); *Beckon v. Emery*, 36 Wis.2d 510, 153 N.W.2d 501 (1967).

The reservations expressed by the United States Supreme Court as to overburdening the trial court with examining voluminous material and making decisions which can properly and effectively be made only by an advocate are not present in this situation. *See Dennis v. United States*, 384 U.S. 855, 874 (1966).