STATE of Wisconsin, Plaintiff-Respondent,

v.

Robert LeQUE, Defendant-Appellant. †

Court of Appeals

*No. 88-0921-CR. Argued January 19, 1989.—Decided April 26, 1989.*

(Also reported in 442 N.W.2d 494.)

† Petition to review denied.

On behalf of the defendant-appellant the cause was submitted on the briefs of *William Retert,* first assistant state public defender and the oral argument of *Mary Wolfe,* assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *William L. Gansner,* assistant attorney general, and the oral argument of *William L. Gansner.*

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.   Robert LeQue appeals from two nonfinal orders denying his motions to dismiss for lack of subject matter jurisdiction and prosecutorial delay.[1] Twenty days after his eighteenth birthday, LeQue was charged in adult circuit court with three counts of first-degree sexual assault, crimes which he allegedly committed when he was fifteen years old. We conclude that LeQue is subject to adult circuit court jurisdiction because the age of the defendant on the date the action is filed, not his age on the date of the alleged offense, determines whether the adult court has subject matter jurisdiction over a criminal proceeding. Furthermore, we conclude that the state successfully met its burden of showing that LeQue's charging was not the result of intentional manipulation designed to avoid juvenile court jurisdiction. Therefore, we affirm both orders.

On January 12, 1988, S.M. reported to a school counselor that she had been sexually assaulted by LeQue on three occasions between May and July of 1985. At the

---

[1] This court granted LeQue's motion for leave to appeal on June 27, 1988.

time of these alleged offenses, S.M. was eight and one-half years of age and LeQue was fifteen years of age. The counselor immediately notified the school principal and the department of health and social services (DHSS) of S.M.'s allegations. Two days later, January 14, Joanne Schneider from DHSS interviewed S.M. at school. After the interview, Schneider returned to her office where she looked up LeQue's age and learned that he would turn eighteen on February 3, twenty days later. The next day, January 15, Schneider referred S.M. to juvenile intake and reported the assault to Detective Berger of the City of Fond du Lac Police Department. She briefed Berger on the case and told him she would call him back after she had interviewed S.M.'s parents to determine if they would cooperate with the police investigation.

Due to the parents' work schedules, Schneider was unable to meet with them until five days later, January 20. Neither S.M. nor the police were present at the meeting. After this meeting, Schneider telephoned a city of Fond du Lac police captain and informed him that S.M.'s parents would be unable to meet with Detective Berger due to their work schedules. Schneider asked the captain to assign another officer. Detective Gerald Bonlander was then assigned to the case.

According to Schneider's testimony, S.M.'s parents wanted to be at the police interview, but their work schedules again made scheduling difficult. After several telephone calls to S.M.'s parents and Detective Bonlander, Schneider was able to set February 4, 1988 as a mutually agreeable meeting time for the police interview. The day before this interview, February 3, LeQue turned eighteen.

Following the interview, Detective Bonlander referred the case to the district attorney, and on February 23, 1988, a criminal complaint was issued charging

LeQue with three counts of first-degree sexual assault. The record does not reveal that any representative of the City of Fond du Lac Police Department was expressly informed that LeQue was about to turn eighteen. However, LeQue had experienced numerous juvenile contacts with the Fond du Lac city and county criminal justice system. These included a juvenile waiver hearing in an unrelated matter on January 13.

LeQue moved for dismissal on alternate theories. First, he alleged that the adult circuit court lacked subject matter jurisdiction. He pointed out that sec. 48.18(1), Stats., prohibits the juvenile court from waiving jurisdiction over crimes committed by a child before the child's sixteenth birthday.[2] He therefore argued that the legislature did not intend to allow the adult court to obtain subject matter jurisdiction over a crime committed by a fifteen-year-old just because the alleged offender was not charged until he was eighteen. The trial court rejected this argument, concluding that the law "states that the date of commencing the action, rather than the date of the alleged criminal action, is what determines whether or not there is juvenile jurisdiction." (Citing *State v. Avery,* 80 Wis. 2d 305, 259 N.W.2d 63 (1977); *State v. Becker,* 74 Wis. 2d 675, 247 N.W.2d 495 (1976);

---

[2]Section 48.18(1), Stats., provides:

> If a child is alleged to have violated s. 940.01 or 940.02 on or after his or her 14th birthday or if a child is alleged to have violated any state criminal law on or after his or her 16th birthday, the child or district attorney may apply to the court to waive its jurisdiction under this chapter.

Except for the reference to secs. 940.01, Stats. (first-degree intentional homicide) and 940.02, Stats. (first-degree reckless homicide), this statute remains the same as that in effect at the time of the alleged offenses in this case. The change in the statute does not affect the issues on appeal.

*State ex rel. Koopman v. County Court,* 38 Wis. 2d 492, 157 N.W.2d 623 (1968)).

LeQue also contended that the adult circuit court's exercise of jurisdiction deprived him of his rights to equal protection and due process under the United States and Wisconsin Constitutions. In his brief in support of his motion to dismiss, LeQue argued that an irrational and arbitrary classification is created by a system which would have prohibited adult prosecution of this offense if the matter had been charged prior to his eighteenth birthday, but which would permit adult prosecution now that the charges were issued after his eighteenth birthday. The trial court did not address this argument in its decision.[3]

Alternatively, LeQue argued that even if subject matter jurisdiction existed, the action must be dismissed because the state failed to act with due dispatch and the resultant delay was intentional and negligent. The trial court rejected this further argument, determining that the twenty-two day period between S.M.'s report of the assault and LeQue's eighteenth birthday was an investigative period; that there was neither intentional nor negligent delay on the part of the state; and that the state had acted with due dispatch. LeQue appeals.

■ A circuit court's jurisdiction over criminal matters is derived from the Wisconsin Constitution and statutes. Wis. Const. art. VII, sec. 8; sec. 753.03, Stats.; *see also In*

[3]This oversight was likely due to LeQue's failure to fully brief the issue or to raise it at all during oral argument to the trial court. Both in the trial court and on appeal LeQue's briefing of this issue has been minimal: one paragraph of underdeveloped legal argument on deprivation of equal protection and due process. However, we deem the issue sufficiently raised, although minimally so, to address it on appeal.

*re Carlson,* 147 Wis. 2d 630, 635, 433 N.W.2d 635, 637 (Ct. App. 1988). Thus, whether the circuit court has jurisdiction over a particular criminal complaint presents a question of statutory and constitutional interpretation. *Carlson,* 147 Wis. 2d at 635, 433 N.W.2d at 637. This is a question of law to which we apply an independent standard of review. *Id.*

The issue in this case is whether the adult circuit court has jurisdiction over an adult[4] who is charged with a crime allegedly committed at age fifteen, a crime for which the alleged offender could not have been waived into adult court if he had been charged while still a juvenile. Sec. 48.18(1), Stats. Until now, case law has dealt only with instances in which an adult was charged with a crime committed at age seventeen. *See Avery,* 80 Wis. 2d at 307, 259 N.W.2d at 64; *Becker,* 74 Wis. 2d at 676, 247 N.W.2d at 496; *Koopman,* 38 Wis. 2d at 494, 157 N.W.2d at 624. In these cases, the supreme court has held that it is the defendant's age on the date of commencing the action, rather than the date of the alleged criminal act, which determines whether there is any bar to adult court jurisdiction. *Avery,* 80 Wis. 2d at 310, 259 N.W.2d at 65; *Koopman,* 38 Wis. 2d at 499–500, 157 N.W.2d at 627.

This case, however, involves a juvenile who could not have been waived into the adult court had a juvenile proceeding been promptly commenced following commission of the alleged offense. Sec. 48.18(1), Stats. This distinction, LeQue argues, serves to bar the adult circuit court from exercising subject matter jurisdiction which *Avery, Becker* and *Koopman* would otherwise confer. We disagree.

---

[4]An adult means a person who is eighteen years of age or older. Sec. 48.02(1), Stats.

At the heart of LeQue's statutory argument is the juvenile waiver statute, sec. 48.18, Stats. This statute permits the juvenile court to waive its exclusive jurisdiction over a child if the child is alleged to have violated a state criminal law on or after his or her sixteenth birthday. *Id.* We have previously held that this statute establishes the juvenile's age at the time of the offense as determinative of the point at which the juvenile court can *waive* jurisdiction. *In re D.V.,* 100 Wis. 2d 363, 367, 302 N.W.2d 64, 66 (Ct. App. 1981).[5]

LeQue correctly states that if he had been charged twenty days earlier, the juvenile court would have had exclusive jurisdiction. Sec. 48.12(1), Stats. From this he argues that the juvenile court would have been powerless to waive its jurisdiction because he was only fifteen at the time of the alleged offenses. Sec. 48.18, Stats. Since LeQue would likely have turned eighteen before any plea hearing, LeQue further reasons that the juvenile court would then have had the limited options of either dismissing the action with prejudice or entering into a consent decree. Sec. 48.12(2).[6]

From this premise, LeQue argues that there is no rational basis for prohibiting adult prosecution of an action if the matter was reported, investigated and pros-

---

[5]The issue in *In re D.V.,* 100 Wis. 2d 363, 364-65, 302 N.W.2d 64, 65 (Ct. App. 1981), was whether the juvenile was subject to the CHIPS arm or the delinquency arm of the juvenile court's jurisdiction.

[6]We stress that the issue in this case does not require us to accept or reject LeQue's argument that if he had been charged in juvenile court shortly before his eighteenth birthday, and he had then turned eighteen before a plea hearing, the juvenile court's options would have been limited to a dismissal with prejudice or a consent decree pursuant to sec. 48.12(2), Stats.

ecuted promptly, but permitting such prosecution if there is delay which carries the charging date beyond the alleged offender's eighteenth birthday. LeQue argues that this is an absurd result which conflicts with the waiver statute's objectives. We reject this reasoning.

■

Section 753.03, Stats., provides that "circuit courts have power to hear and determine, within their respective circuits, all civil and criminal actions and proceedings unless exclusive jurisdiction is given to some other court." Therefore, an adult circuit court's jurisdiction over criminal matters is circumscribed only by the exclusive jurisdiction given to the juvenile court over children alleged to have committed crimes. The delinquency arm of the juvenile court is vested with exclusive jurisdiction of children over twelve years of age and less than eighteen years of age who have violated state or federal criminal law. Secs. 48.12(1) and 48.02(3m), Stats.[7]

The legislature has specified in sec. 48.18, Stats., that age at the time of the offense determines the juvenile court's authority to *waive* its exclusive jurisdiction. *In re D.V.,* 100 Wis. 2d at 367, 302 N.W.2d at 66. The legislature could have provided in secs. 753.03 and 48.12(1), Stats., a similar age demarcation as the *jurisdictional* point of division between the adult and juvenile courts. Instead, sec. 753.03 gives the adult circuit court the authority to determine *all* criminal actions. This authority is circumscribed only by the juvenile court's jurisdiction and it is well established that this restriction only exists if the defendant is under the age of eighteen when charged. *Avery,* 80 Wis. 2d at 310, 259 N.W.2d at 65; *Koopman,* 38 Wis. 2d at 499-500, 157 N.W.2d at 627.

---

[7]The only exceptions are traffic, boating and civil law ordinance violations (sec. 48.17, Stats.), and waiver situations (sec. 48.18, Stats.).

We conclude that the waiver statute, if applied, circumscribes *only* the jurisdiction of the juvenile court—not that of the adult court. Thus, there is no statutory bar to the adult court's assertion of subject matter jurisdiction over this criminal proceeding against LeQue.

We are also unpersuaded by LeQue's argument that the purpose and intent of ch. 48, Stats., is best served by prohibiting the adult circuit court from exercising subject matter jurisdiction in this case. "[T]he role of the juvenile court is not to determine guilt or to assign fault, but to diagnose the cause of the child's problems and help resolve those problems." *State ex rel. Herget v. Circuit Court,* 84 Wis. 2d 435, 451, 267 N.W.2d 309, 316 (1978). LeQue is no longer a child. His adult interests do not qualify under the goals and legislative purposes set forth in sec. 48.01, Stats., all of which are addressed to the considerations of "children."

We conclude that under secs. 753.03 and 48.12, Stats., the adult circuit court has subject matter jurisdiction to hear and determine any charges brought against an adult defendant, regardless of the defendant's age at the time of the offense.

We next address LeQue's due process and equal protection objections to the adult court's jurisdiction. This presents a question of constitutional fact. *State v. Woods,* 117 Wis. 2d 701, 715, 345 N.W.2d 457, 465 (1984). Were such an issue decided by the trial court, we would owe it no deference. *Id.* Here, the trial court did not make any historical fact findings or constitutional conclusions regarding this issue.[8] However, the historical facts relevant to this inquiry are not in dispute. Therefore our ability to review is not thwarted by absence of

[8]*See supra* note 6.

these findings and conclusions. We will independently review the application of equal protection and due process principles to the undisputed facts without deference to the trial court. *Id.*

LeQue apparently argues that if secs. 753.03 and 48.12, Stats., are interpreted to allow the adult court to exercise jurisdiction over this criminal proceeding, his equal protection and due process rights are violated. In raising a constitutional challenge to these statutes, LeQue assumes a heavy burden.

> It is not enough that respondent establish doubt as to the act's constitutionality nor is it sufficient that respondent establish the unconstitutionality of the act as a probability. Unconstitutionality of the act must be demonstrated beyond a reasonable doubt. Every presumption must be indulged to sustain the law if at all possible and, whenever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of constitutionality. This court has often affirmed the well-established presumption of constitutionality that attaches itself to all legislative acts.

*Mulder v. Acme-Cleveland Corp.,* 95 Wis. 2d 173, 187, 290 N.W.2d 276, 283 (1980).

LeQue's equal protection argument is that his adult court prosecution unconstitutionally creates an irrational and arbitrary classification because it is based upon the date of the charging—not the date of the offense. *See State v. Field,* 118 Wis. 2d 269, 282, 347 N.W.2d 365, 371-72 (1984). This is nothing more than *Avery/Becker* revisited—but in an equal protection rather than a due process setting.

The distinctions drawn by the legislature between children charged with crimes and adults charged with

crimes is neither irrational nor arbitrary. The purpose of the children's code, which prohibits adult prosecution of children charged with crimes, is "to remove from children committing delinquent acts the consequences of criminal behavior and to substitute therefor a program of supervision, care and rehabilitation." Sec. 48.01(1)(c), Stats. Individuals who are charged as children have the needs of children, and are, presumably, receptive to treatment designed for children. However, individuals who are charged as adults, regardless of when the criminal act was committed, no longer will benefit from treatment which is designed to benefit children. Such individuals have adult interests and needs. Because of these differences, the legislature's distinctions between adults and children based on the date of charging are neither irrational nor arbitrary.

As to LeQue's due process argument, this is already governed by the law of *Avery, Becker* and *State v. Montgomery*, 148 Wis. 2d 593, 436 N.W.2d 303 (1989). LeQue has a due process right not to be deprived of the potential benefits of juvenile jurisdiction through deliberate state manipulation designed to avoid juvenile jurisdiction. *Becker,* 74 Wis. 2d at 677, 247 N.W.2d at 496. However, due process does not protect a defendant from the loss of juvenile court jurisdiction due to the mere passage of time, absent such manipulative intent by the state. We now address whether such manipulative intent existed under the facts of this case.

LeQue argues that the state did not meet its burden of showing: (1) that he was charged with "due dispatch;" and (2) that the charging delay was neither intentional nor negligent. *Id.* at 676-78, 247 N.W.2d at 496-97; *Avery,* 80 Wis. 2d at 310-11, 259 N.W.2d at 65.

Since the filing of the briefs in this case, the Wisconsin Supreme Court has released its opinion in *State*

*v. Montgomery,* 148 Wis. 2d 593, 436 N.W.2d 303 (1989). In *Montgomery,* the supreme court clarified the applicable standard when a defendant claims that the state has improperly delayed charging until adult status is attained. The court withdrew its language in *Avery* which appeared to include "negligent delay" in the standard. *Montgomery,* 148 Wis. 2d at 602–03, 436 N.W.2d at 307. Instead, the *Montgomery* court held that the state only had to show that there was no "manipulative intent" to avoid the juvenile court's jurisdiction. *Id.* at 603, 436 N.W.2d at 307.

The burden of proof to show lack of manipulative intent is on the state. *Id.* On appeal, the trial court's factual findings will not be disturbed unless clearly erroneous. Sec. 805.17(2), Stats.

At the time this case was in the trial court, the parties and the trial court did not have the benefit of *Montgomery.* Thus, the trial court properly made factual findings relevant to the then applicable standards of "due dispatch" and "intentional and negligent delay."

The trial court specifically found that the period of time between S.M.'s report of the assaults and LeQue's eighteenth birthday was an "investigative period." Furthermore, the court found that the circumstances of this particular case showed no intentional or negligent delay on the part of the police department, DHSS, juvenile intake, or the district attorney's office. Finally, as to due dispatch, the trial court found that the district attorney's office acted properly and that the information received was processed within a proper period of time. We conclude that these factual findings are not clearly erroneous and that they support a finding that the state did not act with manipulative intent to avoid juvenile court jurisdiction.

The period of time in dispute is the twenty-two days between S.M.'s report of the assaults and LeQue's eighteenth birthday. During that time, DHSS representative Schneider was attempting to set up investigative interviews. The evidence showed that there was only a five-day lag between S.M.'s report and Schneider's meeting with S.M.'s parents. The police did not become actively involved until after Schneider interviewed the parents and obtained their cooperation. Due to conflicting schedules, Schneider had difficulty arranging a time for Detective Bonlander to interview S.M. Even then, the investigative interview was conducted within two weeks. We conclude that this evidence supports the trial court's finding that no deliberate intent to delay the investigation existed. We deem this finding to be the equivalent of a lack of "manipulative intent" under *Montgomery*.

Although unnecessary to this appeal in light of *Montgomery*, we additionally conclude that the findings of due dispatch and lack of negligent delay are also supported by the evidence. This case involved serious allegations of sexual assault, occurring some three years earlier. Even without the problem presented by the victim's delayed reporting of the incidents, the period of time devoted to the investigation prior to the actual charging date does not strike us as facially or patently unreasonable. We recognize that this is not the only factor to be considered. However, the "staleness" of the report clearly heightened the need for a thorough investigation and close scrutiny of the allegations. This served the best interests of all concerned—victim, accused and the public. This was hardly a case in which a snap prosecutorial decision—despite the significance of adult versus juvenile prosecution—should be made.

LeQue argues that the facts as known from the January 12, 1988 interview with S.M. formed the basis of the criminal complaint and since the state gleaned no further information from the second interview with S.M., no further investigation was necessary. The flaw in this argument is self-evident. Until further investigation was undertaken, there was no way for the authorities to know if additional information supported or weakened the allegations.

If charges were to be brought against LeQue in either juvenile or adult court, the prosecutor would have to meet: (1) the probable cause requirements of a delinquency petition or criminal complaint, *see* secs. 48.255(1)(d), 968.03, Stats.; (2) the probable cause requirements of a preliminary hearing, *see* sec. 970.03, Stats.; *State v. Drogsvold,* 104 Wis. 2d 247, 258, 311 N.W.2d 243, 248 (Ct. App. 1981); and (3) the "beyond a reasonable doubt" burden of proof in a criminal or juvenile case, *see* secs. 48.31(1), 939.70, Stats.; *State v. Schulz,* 102 Wis. 2d 423, 427, 307 N.W.2d 151, 154 (1981). Moreover, the discretion of the prosecutor extends to choosing not to prosecute even when a violation of the law appears to have occurred. *State ex rel. Unnamed Petitioners v. Connors,* 136 Wis. 2d 118, 126, 401 N.W.2d 782, 785 (1987) (quoting *State ex rel. Kurkierewicz v. Cannon,* 42 Wis. 2d 368, 378, 166 N.W.2d 255, 260 (1969)). LeQue's argument frustrates all of these considerations.

LeQue also argues that since Schneider, Detective Bonlander, the district attorney and the juvenile intake worker all knew that his eighteenth birthday was approaching, they should have expedited the investigation so as to charge him in juvenile court. He argues that their failure to do so establishes negligent delay and a failure to act with due dispatch. While the case law has

recognized the constitutional dimension of the right to a non-manipulative processing of a complaint against a juvenile, none of the authorities has required that this be at the expense of a thorough and complete police investigation. The law does not require that the procedure be hastened—only that it not be intentionally delayed. We cannot conclude that the state's failure to, in essence, do LeQue a favor necessarily translates into intentional state manipulation designed to avoid juvenile court jurisdiction.

The trial court's findings that the period of time intervening between the report of the incident and LeQue's eighteenth birthday represented legitimate investigation and was not the product of intentional or negligent delay are not clearly erroneous and support a finding of a lack of intentional state manipulation.

*By the Court.*—Orders affirmed.