State of WISCONSIN, Plaintiff-Respondent,

v.

Shaun M. SANDERS, Defendant-Appellant.†

Court of Appeals

*No. 2015AP2328–CR. Submitted on briefs September 14, 2016. —Decided March 15, 2017.*

2017 WI App 22

(Also reported in 895 N.W.2d 41.)

† Petition for Review Filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Craig M. Kuhary* of *Walden & Schuster, S.C.*, Waukesha.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Sarah L. Burgundy*, assistant attorney general, and *Brad D. Schimel*, attorney general.

Before Reilly, P.J., Gundrum and Hagedorn, JJ.

¶ 1. GUNDRUM, J. Shaun M. Sanders appeals from a judgment of conviction for repeated sexual assault of the same child in violation of WIS. STAT. § 948.025 (2015–16),[1] incest with a child in violation of WIS. STAT. § 948.06(1), and child enticement in violation of WIS. STAT. § 948.07. He also appeals an order denying his motion for postconviction relief.[2]

¶ 2. Sanders argues the circuit court lacked subject matter jurisdiction and competency to prosecute him for criminal conduct he allegedly committed when he was under the age of ten, and his trial counsel performed ineffectively by not moving pretrial to preclude the introduction at trial of evidence related to acts occurring prior to his tenth birthday. Sanders also

---

[1] All references to the Wisconsin Statutes are to the 2015–16 version unless otherwise noted.

[2] Judge Jennifer Dorow entered the judgment of conviction and Judge Lee S. Dreyfus, Jr., denied the postconviction motion.

argues his counsel performed ineffectively by failing to object to the jury instructions and verdict form related to the incest count on the ground they were not specific enough so as to require the jury to unanimously agree on one specific act forming the basis of the sexual element of this count. We reject all of Sanders' arguments and affirm.

## *Background*

¶ 3.  The State charged Sanders with four felony counts related to sexual activity he engaged in over several years with his younger sister, H.S. Count one of the Information charged him with committing repeated sexual assaults of H.S. between approximately September 26, 2003, and June 5, 2006, a time period when H.S. was seven to nine years old and Sanders was nine to twelve years old. Counts two, three, and four respectively charged Sanders with committing repeated sexual assault of, incest with, and child enticement of H.S. between approximately September 26, 2008, and September 25, 2012, a time period when H.S. was twelve to fifteen years old and Sanders was fourteen to eighteen years old. A jury trial was held, at which the following relevant testimony was presented.

¶ 4.  H.S. testified that in December 2012 she was communicating with her boyfriend via Skype when her brother, Sanders, entered her bedroom and said "peek." H.S. responded by immediately ending her Skype communication, participating in a "peek" with Sanders, and afterward reestablishing Skype communication with her boyfriend. H.S. testified that "whenever [Sanders] came in and demanded with the word 'peek,' it meant that I was supposed to lift my shirt, and he would suck and fondle and kiss each of my breasts." H.S.'s boyfriend also testified to communicat-

ing with H.S. via Skype, Sanders entering H.S.'s bedroom and saying "something about a peek," H.S. abruptly ending the Skype communication for about "a minute, minute and a half," and H.S. then reestablishing Skype communication with him.

¶ 5.   H.S. testified she was six or seven years old[3] the first time Sanders had her participate in a "peek." She did not remember details, but stated, "All I know is that eventually, it just became something that I did . . . [a]nd that I was expected to do." The "peeks" "always involve[d] touching," and took place in H.S.'s bedroom, Sanders' bedroom, and "[i]f my parents weren't there, it could happen anywhere in the house." Between the time of the first "peek" and December 2012, the "peeks" occurred "[o]ver 200 times."

¶ 6.   H.S. confirmed that the "peeks" eventually "led to something else," and testified to a specific occasion where Sanders took her into the walk-in closet in her bedroom, which had the blinds closed, and "showed" her, as H.S. recalled Sanders stating it, "the proper way to give a blow job." She described the "blow job" as her putting her mouth on Sanders' penis and sucking "until he ejaculate[d] into his shirt." H.S. performed such oral sex on Sanders "[a]round ten" times, in either H.S.'s or Sanders' bedroom, but she "[did] not remember . . . times" other than the incident in her walk-in closet. She recalled "[t]here were several times where I would be in the kitchen or I would be downstairs, and he would walk past and tell me that I was expected in his room at a certain time at night when both of my parents were asleep." She would go to his room in response:   "Sometimes it would just be a peek, and most of the time, it would be oral sex, or I

---

[3] Sanders would have been eight to ten years old.

would watch him masturbate." She stated "[t]here were times where it was every other month, and there were times where it would be every other day." H.S. was "[t]welve or thirteen" the first time she engaged in oral sex with Sanders, and it "stopped" when Sanders went to "boot camp" in May 2012.

¶ 7.  In his defense, Sanders testified he did not commit any of the actions to which H.S. testified. Instead, he told the jury that for a one-month period when he was around eight or nine years old, he would ask H.S. "to lift up her shirt and show her breasts." He testified that he called this a "peek," no contact was involved, it never occurred again after that month, and to his "knowledge" there was never any sexual touching between him and his sister. He stated he did not know at the time that the "peeks" were wrong, "but now I do."

¶ 8.  The jury found Sanders not guilty on count one and guilty on counts two through four. He filed a postconviction motion alleging his trial counsel provided him ineffective assistance. The circuit court denied Sanders' motion, and he appeals.

### Discussion

¶ 9.  Sanders asserts he was improperly prosecuted on count one because that count included time during which he was under ten years of age and the circuit court lacked subject matter jurisdiction and the competency to exercise that jurisdiction to prosecute him for acts committed prior to age ten. Relatedly, he argues his trial counsel performed ineffectively in failing to challenge count one on these grounds prior to trial. While the jury ultimately did acquit Sanders on that count, he asserts that because the count was not

dismissed prior to trial, evidence was admitted at trial specifically related to that count which prejudiced him with regard to the other counts. Sanders also contends his trial counsel performed ineffectively in failing to object to the jury instructions and verdict form related to count three, incest, on the basis the victim testified to multiple instances of sexual contact with Sanders yet the instructions and verdict form did not require the jury to unanimously agree upon which specific sexual act formed the basis of the incest guilty verdict. We affirm Sanders' convictions because we conclude there was no jurisdiction or competency problem with regard to count one and counsel was not ineffective in failing to challenge that count or the jury instructions and verdict form related to count three.

*Sanders' Pre-Age-Ten Conduct*

¶ 10.    "We independently review questions of subject matter jurisdiction and competency." *City of Eau Claire v. Booth*, 2016 WI 65, ¶ 6, 370 Wis. 2d 595, 882 N.W.2d 738. With regard to a claim of ineffective assistance of counsel, to be successful, a defendant must show counsel's performance was deficient and the deficiency prejudiced him/her. *See State v. Erickson*, 227 Wis. 2d 758, 768, 596 N.W.2d 749 (1999). If the defendant fails to prove one prong, we need not address the other. *See Strickland v. Washington*, 466 U.S. 668, 697 (1984). Whether counsel's performance was deficient or prejudicial is a question of law we review de novo. *State v. Jeannie M.P.*, 2005 WI App 183, ¶ 6, 286 Wis. 2d 721, 703 N.W.2d 694.

¶ 11.    Before the circuit court and initially on appeal, Sanders' only issue related to count one was

256

that the circuit court lacked subject matter jurisdiction and counsel was ineffective for not raising the matter prior to trial. We sought supplemental briefing from Sanders and the State, asking if the matter is really one of competency, not jurisdiction. In their supplemental briefs, both parties agree the issue they previously addressed as jurisdiction is really an issue of competency. Sanders, however, also maintains the additional position that the circuit court "did not have criminal subject matter jurisdiction on count one . . . because it did not allege an offense known to law."

¶ 12.   Sanders' contention the circuit court lacked jurisdiction related to count one is a nonstarter. Even though Sanders' trial counsel failed to raise this issue prior to trial, we nonetheless review the matter directly because a challenge to subject matter jurisdiction cannot be forfeited. *See Booth*, 370 Wis. 2d 595, ¶ 1. In *Booth*, our supreme court recently reconfirmed in unmistakable and definitive language that "no circuit court is without subject matter jurisdiction to entertain actions of any nature whatsoever." *Id.*, ¶ 18 (quoting *Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶ 8, 273 Wis. 2d 76, 681 N.W.2d 190). Even where a complaint fails to state an offense known to law[4]—the subject matter jurisdiction position Sanders maintains

---

[4] In *City of Eau Claire v. Booth*, 2016 WI 65, 370 Wis. 2d 595, 882 N.W.2d 738, our supreme court rejected an argument similar to that raised by Sanders. Booth argued the circuit court was without subject matter jurisdiction because "a second offense criminal OWI charged as a first offense civil OWI is not an offense known at law." *Id.*, ¶ 16. The court soundly rejected this argument "because first-offense and second-offense OWIs are both offenses known at law as set forth in our statutes. In addition, [the defendant] was charged with a first-offense OWI, an offense that irrefutably exists under our

—"the court must retain subject matter jurisdiction to dispose of the matter." *Id.*, ¶ 17. Here, the circuit court had subject matter jurisdiction.

■

¶ 13. "A circuit court's ability to exercise its subject matter jurisdiction in individual cases, however, may be affected by noncompliance with statutory requirements pertaining to the invocation of that jurisdiction." *Id.*, ¶ 12 (quoting *Mikrut*, 273 Wis. 2d 76, ¶ 2). "The failure to comply with these statutory conditions . . . may under certain circumstances affect the circuit court's competency to proceed to judgment in the particular case before the court." *Id.*, ¶ 12 (quoting *Mikrut*, 273 Wis. 2d 76, ¶ 2). With his supplemental briefing, Sanders modifies his initial jurisdiction arguments to assert the circuit court was not competent to proceed on count one because our statutes "mandate" that a person cannot be held criminally liable for a wrongful act he/she committed before age ten. His competency claim fails as well.[5]

---

statutes." *Id.* (citation omitted). Likewise, here, repeated sexual assault of a child is "an offense that irrefutably exists under our statutes."

[5] Sanders cannot be heavily faulted for initially referring to jurisdiction instead of competency. The State has also used the term "jurisdiction" instead of competency throughout these proceedings, as did the circuit court. In addition, from time to time throughout the years, our appellate courts have mistakenly referred to competency issues as issues of subject matter jurisdiction. Even our legislature has occasionally referred to "jurisdiction" when the matter really addressed is competency, as we noted in *Michael J.L. v. State*, 174 Wis. 2d 131, 137, 496 N.W.2d 758 (Ct. App. 1993):

> By statute, juvenile courts have "exclusive jurisdiction" over children twelve years of age or older alleged to be delinquent. *See* [Wis. Stat. §] 48.12(1). Because this "exclusive jurisdiction" is

¶ 14. To begin, we note that "challenges to the circuit court's competency are [forfeited] if not raised in the circuit court." *Mikrut*, 273 Wis. 2d 76, ¶ 30; *see also Booth*, 370 Wis. 2d 595, ¶¶ 21, 25. Here, Sanders did not raise the issue of competency before the circuit court; thus he forfeited any challenge on this basis. Despite the forfeiture, we nonetheless will address the competency issue, but we do so within the rubric of ineffective assistance of counsel. *See Erickson*, 227 Wis. 2d at 766 (while appellate courts can ignore forfeiture, the "normal procedure" in criminal cases is to address forfeiture within the rubric of an ineffective assistance of counsel analysis). We conclude trial counsel did not perform deficiently in failing to raise the competency issue prior to trial; therefore, the assistance counsel provided Sanders was not ineffective.

¶ 15. Sanders insists "that persons who commit acts under the age of 10 are not old enough *by law* to invoke the provisions of the Juvenile Justice Code *or* the Wisconsin Criminal Code." In support, he first cites to Wis. Stat. § 938.12(1), which provides: "The [juvenile] court has exclusive jurisdiction . . . over any juvenile 10 years of age or older who is alleged to be delinquent." Sanders then points to Wis. Stat. § 938.02(3m), which defines "delinquent" as "a juvenile

conferred by statute and not by our state constitution, it is among the lesser powers of a circuit court. Therefore, it is more properly referred to as the "competency" of the court to adjudicate a specific case brought under the juvenile code.

Citing to article VII, section 8 of the Wisconsin Constitution, our supreme court reconfirmed in *Booth* that because subject matter jurisdiction is granted to circuit courts by our constitution, such jurisdiction "cannot be 'curtailed by state statute.'" *Booth*, 370 Wis. 2d 595, ¶ 7 (quoting *Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶ 8, 273 Wis. 2d 76, 681 N.W.2d 190).

259

who is 10 years of age or older who has violated any state or federal criminal law." Finally, Sanders refers us to Wɪs. Stat. § 938.183(1)(am), which states:

(1) JUVENILES UNDER ADULT COURT JURISDICTION. Notwithstanding [Wɪs. Stat. §§ ] 938.12(1) and 938.18, courts of criminal jurisdiction have exclusive original jurisdiction over . . . .

 . . . .

(am) A juvenile who is alleged to have attempted or committed a violation of [Wɪs. Stat. §] 940.01 [first-degree intentional homicide] or to have committed a violation of [Wɪs. Stat. §] 940.02 [first-degree reckless homicide] or [Wɪs. Stat. §] 940.05 [second-degree intentional homicide] on or after the juvenile's 10th birthday.

¶ 16. Relying on these statutory provisions, Sanders initially asserts the legislature must have intended a person could not be held liable criminally or as a juvenile delinquent for criminal acts he/she committed before his/her tenth birthday otherwise the legislature would have specifically stated that individuals could be held liable for such acts. In his reply brief, however, he goes further, asserting "the legislature has clearly and unequivocally stated that children under the age of ten are simply not capable of forming the necessary intent, or *actus reus,* to commit violations of state or federal law." The legislature most certainly did not "clearly and unequivocally" state this. With no statute providing the clarity Sanders desires, he cobbles together the multiple statutes cited above to draw the strained inference that the legislature intended no one be held liable criminally or as a juvenile delinquent for criminal acts he/she committed before the age of ten. These provisions hardly constitute a clear statutory mandate upon which to conclude the

260

circuit court lacked competency with regard to count one, much less to conclude Sanders' trial counsel performed deficiently in not objecting to count one on this ground prior to trial. As we have stated, "counsel does not perform deficiently in failing to 'object and argue a point of law' that is 'unclear.'" *State v. Morales-Pedrosa*, 2016 WI App 38, ¶ 16, 369 Wis. 2d 75, 879 N.W.2d 772 (citation omitted). Furthermore, Wisconsin case law indicates the circuit court was competent to adjudicate count one.

¶ 17. As indicated, *see supra* note 4, older cases often used the terms "subject matter jurisdiction" or "jurisdiction" when the matter under consideration really was the competency of the circuit court to proceed to judgment on a matter. The following cases reflect this misnomer. With the understanding that the cases are really referring to competency, these cases provide us significant guidance.

¶ 18. In *State ex rel. Koopman v. County Court*, 38 Wis. 2d 492, 157 N.W.2d 623 (1968), the defendant sought a writ of prohibition to determine whether criminal proceedings for burglary could proceed against him because, although he was over age eighteen when the criminal complaint was issued, he was under age eighteen when he allegedly committed the offenses. *Id.* at 494. The *Koopman* court noted that then-WIS. STAT. § 48.12—the predecessor to WIS. STAT. § 938.12, addressing "jurisdiction" over allegedly delinquent juveniles—provided in material part that "[t]he juvenile court has exclusive jurisdiction . . . over any child who is *alleged* to be delinquent." *Koopman*, 38 Wis. 2d at 497 (emphasis added). Literally construing the statute, the court held that the criminal court, not the juvenile court, had "jurisdiction" to proceed against the defendant because the age of an individual

261

at the time legal *allegations* are filed against him/her, not his/her age at the time of the offense, determines which court, juvenile or adult criminal, has competency to adjudicate the case. *Id.* at 498–500.

¶ 19.   Approximately twenty years later, in *State v. LeQue*, 150 Wis. 2d 256, 442 N.W.2d 494 (Ct. App. 1989), we addressed the question of "whether the adult circuit court has jurisdiction over an adult who is charged with a crime allegedly committed at age fifteen, a crime for which the alleged offender could not have been waived into adult court if he had been charged while still a juvenile." *Id.* at 262 (citation omitted). In answering the question in the affirmative, we concluded that LeQue was "subject to adult circuit court jurisdiction because the age of the defendant on the date the action is filed, not his age on the date of the alleged offense, determines whether the adult court has subject matter jurisdiction over a criminal proceeding." *Id.* at 258. Essentially echoing *Koopman,* we added that "under [Wis. Stat. §§] 753.03 ["Jurisdiction of circuit courts"] and 48.12, . . . the adult circuit court has subject matter jurisdiction to hear and determine *any charges* brought against an adult defendant, *regardless of the defendant's age at the time of the offense.*" *LeQue*, 150 Wis. 2d at 265 (emphasis added); *see* 1995 Wis. Act 77, §§ 74–75 (repealing § 48.12 and recodifying it as Wis. Stat. § 938.12).

¶ 20.   A few years after *LeQue*, our supreme court decided *State v. Annala*, 168 Wis. 2d 453, 484 N.W.2d 138 (1992). Annala was fifteen years old when he molested a young child, but twenty years old when it came to the attention of authorities. *Id.* at 458. He was tried and convicted of first-degree sexual assault. *Id.* at 459. On appeal to our supreme court, Annala, challenging our decision in *LeQue*, argued that the adult court

"could not acquire jurisdiction over an adult defendant that allegedly violated the law when he or she was less than sixteen years of age because the juvenile court has exclusive jurisdiction over such delinquent children" and there had not been a proper waiver into adult court. *Annala*, 168 Wis. 2d at 460–61, 463–64. In rejecting Annala's appeal, the *Annala* court agreed with our decision in *LeQue*, and citing to its decision in *Koopman* held, "The jurisdiction of the juvenile court is determined by the individual's age at the time charged, not the individual's age at the time of the alleged offense." *Annala*, 168 Wis. 2d at 463.

¶ 21.  The *Annala* court also gave consideration to our statutes related to the rights of victims and witnesses of crime, stating the WIS. STAT. ch. 950 bill of rights for victims applies "equally" to criminal acts of an adult and criminal acts of a child. The court added, "Any interpretation of [WIS. STAT. §] *48.12* that erases the culpability of child offenders would frustrate the express legislative recognition of victim's rights," *Annala*, 168 Wis. 2d at 467 (emphasis added), and "[t]he rehabilitative needs of a child victim of a sex crime" may demand prosecution and punishment "if that will have a positive influence on the child victim's recovery from the effects of the crime," *id.* at 474. The court also emphasized that "[c]hildren committing delinquent acts remain culpable for their criminal behavior" and "society intends for all individuals to be culpable for their criminal behavior." *Id.* at 468–69, 469 n.6.

¶ 22.  We also take significant note of our decision in *D.V. v. State*, 100 Wis. 2d 363, 302 N.W.2d 64 (Ct. App. 1981). Several years after *Koopman* was decided but before *D.V.* was decided, the legislature added an age, twelve, to several statutes in then-WIS. STAT. ch. 48 (1977). WISCONSIN STAT. § 48.12 (1977) was modified to

read in relevant part: **"Jurisdiction over children alleged to be delinquent**. The court has exclusive jurisdiction . . . over any child *12 years of age or older* who is alleged to be delinquent as defined in [Wis. Stat. §] 48.02(3m) [(1977)]." (Emphasis added.) Section 48.02(3m) (1977) defined "delinquent" as "a child who is less than 18 years of age and 12 years of age or older who has violated any state or federal criminal law." Additionally, the legislature modified Wis. Stat. § 48.13 (1977), related to **"Jurisdiction over children alleged to be in need of protection or services** [CHIPS]," so that it provided in relevant part: "The court has exclusive jurisdiction over a child alleged to be in need of protection or services which can be ordered by the court, and: . . . **(12)** Who, being under 12 years of age, has committed a delinquent act as defined in [§] 48.12 [(1977)]." Thus, at the time of *D.V.*, if legal action for a criminal act was initiated in relation to a child age twelve—now age ten, per Wis. Stat. § 938.12—or older, the matter would be treated as a juvenile delinquency action, pursuant to § 48.12 (1977), but if the child was under age twelve—now age ten, per Wis. Stat. § 938.13(12)—the matter would be treated as a juvenile CHIPS action, pursuant to § 48.13(12) (1977).

¶ 23. In *D.V.*, like the above cases, we mistakenly used the term "jurisdiction" instead of "competency." Doing so, we stated the dispositive determination in the case was "whether the filing date of the petition or the date of the offense determines the jurisdiction of the juvenile court pursuant to [Wis. Stat. §§] 48.12 or 48.13(12) [(1977)]." *D.V.*, 100 Wis. 2d at 365. D.V. was eleven years old when he allegedly committed a robbery, but he was twelve years old when the related delinquency petition was filed. *Id.* at 364. He moved to dismiss the petition, arguing the circuit court "had no

jurisdiction pursuant to [§] 48.12 [(1977)], but had exclusive jurisdiction" pursuant to § 48.13(12) (1977), and thus, the case should be treated as a CHIPS matter, not a juvenile delinquency matter. *D.V.*, 100 Wis. 2d at 364–65. Pointing out that under *Koopman* "the date of the alleged offense was not controlling," we concluded the circuit court had "jurisdiction" to treat the matter as a delinquency action. *D.V.*, 100 Wis. 2d at 365–66. Considering modified §§ 48.12 (1977) and 48.13 (1977), we observed that despite the supreme court having decided *Koopman* over twelve years earlier, "the legislature has not enacted a specific statute expressly providing that juvenile jurisdiction is to be determined by the date of the alleged offense, although [§] 48.12 ([1977)] and other sections of the Children's Code have been subject to innumerable legislative amendments." *D.V.*, 100 Wis. 2d at 365–66.

¶ 24. By the time Sanders allegedly committed the acts related to count one, the legislature had reduced the age at which a person could be treated as a delinquent from twelve years old to ten. Other than that change, the question in this case is essentially the same as it was in *D.V.*,[6] with the exception that we are determining the adult criminal court's competency

---

[6] Indeed, other than the age reduction from twelve to ten, then-Wis. Stat. §§ 48.12(1) (1977) and 48.02(3m) (1977) and Wis. Stat. §§ 938.12(1) and 938.02(3m)—two of the three statutory provisions upon which Sanders bases his argument—are identical for all purposes relevant to this appeal. Sections 938.12(1) and 938.02(3m) respectively provide: "The court has exclusive jurisdiction . . . over any juvenile 10 years of age or older who is alleged to be delinquent" and ' "Delinquent' means a juvenile who is 10 years of age or older who has violated any state or federal criminal law." Also, very similar to then-Wis. Stat. § 48.13 (1977), Wis. Stat. § 938.13 provides:

instead of the juvenile court's competency on a delinquency matter. Under *D.V.*, Sanders' assertion that "persons who commit acts under the age of 10 are not old enough *by law* to invoke the provisions of the Juvenile Justice Code *or* the Wisconsin Criminal Code" is simply incorrect, at least with regard to holding a person accountable under our juvenile delinquency provisions for criminal acts he/she committed before age ten. We further point out that what the *D.V.* court expressed regarding inaction of the legislature is even more apropos today—despite fifty years of holdings reiterating that the competency of a circuit court to address criminal acts of an individual is determined by the individual's age when a legal action is filed and not when he/she committed the acts, "the legislature has not enacted a specific statute expressly providing" that competency "is to be determined by the date of the alleged offense." Just as the circuit court in *D.V.* was competent to adjudicate the matter before it as a delinquency action even though D.V. allegedly had committed the robbery prior to age twelve, likewise in the case now before us, the circuit court was competent to adjudicate count one as an adult criminal action even though Sanders allegedly committed wrongful acts related to that count prior to the age of ten. Absent statutory language clearly stating otherwise—which is not present in this case—a defendant's age on the date

**Jurisdiction over juveniles alleged to be in need of protection or services** . . . . [T]he court has exclusive original jurisdiction over a juvenile alleged to be in need of protection or services which can be ordered by the court if any of the following conditions applies:

. . . .

**(12)** DELINQUENT ACT BEFORE AGE 10. The juvenile is under 10 years of age and has committed a delinquent act.

266

legal action is initiated, not his/her age on the date he/she committed the wrongful acts at issue, controls.

¶ 25.    As intimated, Sanders reads too much into the legislative provisions he relies upon. The legislature has established a clear and rational structure for addressing criminal conduct based upon the age of the offender at the time authorities act upon the conduct. Absent the running of a statute of limitations period[7] or improper delay by law enforcement once aware of allegations,[8] if an offender is statutorily chargeable as an adult when legal action is initiated, the adult criminal court has competency to exercise its jurisdiction regardless of the offender's age when he/she committed the criminal conduct. If the offender is age ten or older but not yet chargeable as an adult when legal action is initiated, the juvenile court has competency to treat the offender as a delinquent. And if the offender is under age ten when allegations of his/her criminal conduct are legally addressed, the juvenile court has competency to treat the child as being in need of protection or services. *See* WIS. STAT.

---

[7] The limitation period for most misdemeanors is three years and for most felonies is six years. Thus, for most offenses, the statute of limitation period for a pre-age-ten criminal act will have run by the time the child turns sixteen.

[8] We noted in *State v. Schroeder*, 224 Wis. 2d 706, 710, 593 N.W.2d 76 (Ct. App. 1999), that our supreme court held in *State v. Becker*, 74 Wis. 2d 675, 247 N.W.2d 495 (1976), that "when a defendant alleges and makes a prima facie showing that the State delayed in filing a complaint in criminal court for the 'purpose of manipulating the system to avoid juvenile court jurisdiction,' 'jurisdiction in criminal court cannot be maintained' unless the State establishes at a 'due-process hearing' that the delay was not for that purpose." *Schroeder*, 224 Wis. 2d at 710 (citation omitted).

§§ 938.02(1) & (3m), 938.12(1), 938.13(12). As the circuit court pointed out in rejecting Sanders' postconviction motion, if Sanders' alleged pre-age-ten sexual conduct with H.S. had come to the attention of and been acted upon by authorities before he turned ten, the matter would have been addressed as a CHIPS matter. These alleged acts, however, did not come to the attention of authorities until Sanders was an adult, and thus they were then properly addressed in adult criminal court.[9]

¶ 26. Sanders asserts, without legal support, "the legislature set distinct age based limits for each system that make[s] up our justice code" for the purpose of "shield[ing] young children under the age of ten from the potential consequences of their actions." Our courts, however, have explained that the legislative purpose of the age limits is to ensure persons who commit criminal acts are treated by our justice system in a manner appropriate to their age when the actions are addressed by the system not their age when they committed the wrongful acts. As our supreme court stated in *Annala*:

> The initial jurisdiction of the juvenile court is framed in terms of the defendant's age at the time of prosecution because the juvenile court is only empowered under [Wis. Stat. §§] 48.34 and 48.344, to impose rehabilitation treatment programs that are designed to benefit delinquent children. The programs are not designed to benefit an adult that has committed a

---

[9] We note that in sentencing Sanders, the circuit court took into account the fact that he was "very young" when the sexual activity began and that the "vast majority of what went on happened" when Sanders and H.S. "were juveniles." In significant part because of these considerations, the court placed Sanders on probation, stating "from the beginning . . . I said if there is a conviction, this is a probationary case."

criminal act, regardless of whether the criminal act was committed when the defendant was a child.

*Annala*, 168 Wis. 2d at 464–65. Our courts have indicated that for the sake of society and in particular victims, an individual may be held accountable for his/her criminal actions even if those actions were committed before he/she turned ten.

¶ 27. Sanders also cites to WIS. STAT. § 938.183(1)(am). Again, that statute provides in relevant part:

> Notwithstanding [WIS. STAT. §§] 938.12(1) and 938.18, courts of criminal jurisdiction have exclusive original jurisdiction over . . . .
>
> . . . .
>
> (am) A juvenile who is alleged to have attempted or committed a violation of [WIS. STAT. §] 940.01 [first-degree intentional homicide] or to have committed a violation of [WIS. STAT. §] 940.02 [first-degree reckless homicide] or [WIS. STAT. §] 940.05 [second-degree intentional homicide] on or after the juvenile's 10th birthday.

Sanders fails to sufficiently develop an argument related to the relevance of this statute other than to essentially note that it also references the age of ten. Contrary to Sanders' desire, this provision does not provide any suggestion the legislature intended that an individual cannot be held legally accountable in juvenile or criminal court for sexual offenses he/she committed prior to age ten.

¶ 28. In the nearly fifty years since *Koopman* and over thirty-five years since *D.V.*, the legislature easily could have specifically and clearly limited criminal liability based upon the age of an offender at the time

of the offense; yet it has not made such a specific and clear declaration, even with regard to criminal acts committed by individuals younger than age ten. It is the legislature's role to enact such a limitation, not ours. *See Lang v. Lang*, 161 Wis. 2d 210, 224, 467 N.W.2d 772 (1991) ("[W]e cannot . . . supply something that is not provided in a statute.").

¶ 29.  At the postconviction hearing, the circuit court correctly determined "there would be no legal basis for the Court to have granted [a motion challenging count one] given what is the statutory framework as well as the case law." Without question, the law did not clearly provide that Sanders could not be prosecuted for criminal sexual acts he was alleged to have committed prior to age ten. On this basis alone, we would have to conclude his trial counsel did not perform deficiently in failing to challenge the competency of the court. *See Morales-Pedrosa*, 369 Wis. 2d 75, ¶ 16. Deciding the issue directly, however, we conclude the court was competent to exercise its jurisdiction with regard to count one.

*The Incest Count*

¶ 30.  Sanders contends his trial counsel performed ineffectively in failing to object to the jury instructions and verdict form related to count three, incest, on the ground they were not specific enough so as to require the jury to unanimously agree on one specific act forming the basis of the sexual contact element of this count. Because we conclude Sanders

270

has failed to demonstrate he was prejudiced by counsel's failure to raise such an objection, we reject this contention.

¶ 31. To prove prejudice, Sanders must show that if his trial counsel had objected to the jury instructions and verdict form "there is a reasonable probability . . . 'the result of the proceeding would have been different.' " *See Erickson*, 227 Wis. 2d at 769 (quoting *Strickland*, 466 U.S. at 694). He has not shown this.

¶ 32. To begin, Sanders devotes only one direct sentence of his appeal to the question of prejudice:

> [I]t was also prejudicial [for trial counsel not to object to the jury instructions and verdict form] because not only is Sanders prejudiced by not knowing what act he stands convicted of, he is also prejudiced by the very real possibility of his guilt having been found based on facts that were part of a volitional act for which the jury also found him not guilty [on count one].

Sanders fails to tell us what jury instructions and verdict form trial counsel should have advocated for and why there is a reasonable probability utilizing such instructions or verdict form would have changed the outcome on this count. Because Sanders does not sufficiently develop the prejudice prong of his ineffective assistance claim, we could affirm his conviction on count three on that basis alone. Performing our own independent review of the record, however, we conclude Sanders was not prejudiced by counsel's failure to object to the instructions and/or verdict form.

¶ 33. Responding to Sanders' sentence related to the prejudice prong, we note that the fact Sanders does not "know[]" what act he stands convicted of" has no

271

bearing on whether there was a reasonable probability of a different result at trial if a more specific jury instruction and/or verdict form had been utilized. Further, his stated concern that the jury may have found him guilty of the incest charge based upon acts related to count one is unfounded. Both before and after the presentation of evidence, the court instructed the jury that the relevant time period related to "[t]he *first* count of the Information" was "September 26, 2003, and June 5, 2006" while the relevant time period related to "[t]he *third* count *of the Information*" was "September 26, 2008, and September 25, 2012," which was the time period the court also instructed was related to counts two and four. (Emphasis added.) The verdict form for the incest count stated: "We, the jury, find the defendant, Shaun M. Sanders, guilty of Incest, *as charged in Count Three of the Information.*" (Emphasis added.) We see no reason to believe the jury's considerations related to count three were not restricted to the time period between September 26, 2008, and September 25, 2012, as opposed to the count one time period. *See State v. Delgado*, 2002 WI App 38, ¶ 17, 250 Wis. 2d 689, 641 N.W.2d 490 ("Juries are presumed to follow the court's instructions.").

¶ 34. We also think it unlikely the jury did not agree on a specific act of sexual contact occurring during the count-three time period. As indicated, with regard to counts two, three, and four, the jury was instructed to focus on the time period between September 26, 2008, and September 25, 2012, which, based upon H.S.'s testimony as to her birthdate, was from the first day she was twelve years old until the last day she was fifteen years old. While H.S.'s testimony was specific as to what would happen during a "peek" and oral sex, it was fairly vague and general with regard to

almost all of the instances of assault that occurred over the multiyear period at issue. As to specific incidents of assault, she testified to only two. One time was when Sanders took her into the walk-in closet in her bedroom, which had the blinds closed, and "showed" her, as H.S. recalled Sanders stating it, "the proper way to give a blow job." H.S. described the "blow job" as her putting her mouth on Sanders' penis and sucking "until he ejaculate[d] into his shirt." While H.S. performed such oral sex on Sanders "[a]round ten" times, she "[did] not remember the other times." With her testimony that she was twelve or thirteen the *first time* she engaged in oral sex with Sanders and that the oral sex stopped when Sanders went to "boot camp" in May 2012, H.S. effectively testified that all of the instances of oral sex, including the one specific incident in her walk-in closet, occurred during the charging period related to counts two through four. The only other specifically detailed incident of sexual contact was the Skype/"peek" incident that occurred in December 2012. That incident, however, took place outside of the time period the jury was instructed to consider in relation to any of the criminal counts. Thus, while H.S. testified to a multitude of vague instances of sexual contact occurring during the time period related to the incest count, she only testified to recalling details of the one specific incident, in her walk-in closet, during that time period.

¶ 35. Although he does not say it, we assume Sanders' complaint that the jury instructions were not sufficiently specific is a complaint that trial counsel should have requested the court provide the jury with an instruction similar to Wɪs JI—Cʀɪᴍɪɴᴀʟ 517. That instruction states:

The defendant is charged with one count of _____ [here, incest]. However, evidence has been introduced of more than one act, any one of which may constitute _____ [incest].

Before you may return a verdict of guilty, all 12 jurors must be satisfied beyond a reasonable doubt that the defendant committed the same act and that the act constituted the crime charged.

¶ 36. The verdicts in this case turned on the credibility of H.S. and Sanders. H.S. testified that when she was six or seven years old, with Sanders then being eight to ten years old, Sanders first directed H.S. to participate with him in conduct he called a "peek." When Sanders said "peek," H.S. was supposed to lift up her shirt and Sanders would then touch and suck on her breasts. H.S. testified that "peeks" occurred more than "200 times" over the years. Eventually Sanders began requiring H.S. to perform oral sex on him, which occurred "around ten" times, with the first time being when she was twelve or thirteen years old.

¶ 37. H.S. and her high school boyfriend both testified to an incident in which, while they were communicating via Skype, Sanders came in to H.S's bedroom and said "peek." In response to this, H.S. abruptly ended the Skype session for a short while and then later resumed it. H.S. testified that this incident occurred in December 2012, and that during the brief time off of Skype, she participated in a "peek" with Sanders.

¶ 38. Sanders' testimony was markedly different from H.S.'s. He testified that for a one-month period when he was around eight or nine years old he would ask H.S. "to lift up her shirt and show her breasts." According to Sanders, this was a "peek." He further testified that no physical contact was involved, it never

occurred again after that month, and to his "knowl-edge" there was never any sexual touching between him and H.S. Sanders testified he did not know the "peeks" were wrong at the time, "but now I do." When his trial counsel asked him, "You heard all the allega-tions your sister made against you. Did those things happen?" Sanders responded, "No."

¶ 39. Based upon the verdicts, it is obvious the jury believed H.S.'s testimony that the sexual conduct addressed by counts two through four did in fact occur, and completely rejected Sanders' testimony that it did not.[10] This was not a case where there was any basis for the jury to find that some of the sexual assaults to which H.S. testified occurred but others did not; in-deed, Sanders' defense was flatly that no sexual touch-ing ever occurred between him and H.S.[11] As noted, the

---

[10] At sentencing, responding to Sanders' continued denial that any sexual touching ever occurred, the circuit court stated: "A jury made a credibility determination . . . . [Y]our defense was presented, and the jury listened to your sister and . . . to you . . . and the jury believed your sister, and that's what you have to accept."

[11] As noted, the jury did acquit Sanders on count one. We cannot conclude from this, however, that the jury believed Sanders' testimony that no sexual touching occurred with respect to that charge. We note that with regard to count one, the jury sent a note to the circuit court during deliberations asking, "How can we judge the sexual intent of a 9– to 11–year-old as it relates to Count No. 1?" The asking of this question alone suggests the jury likely did believe sexual touching occurred with regard to count one but just questioned whether Sanders could have had the requisite intent at that age to meet the definition of "sexual contact" provided by the court as part of the closing jury instructions:

Sexual contact is an intentional touching of the breasts of [H.S] by the Defendant . . . . The touching may be done by any body part or by any object, but it must be an intentional touching.

only incident specifically detailed for the jury that could have fallen within the time period of counts two through four—and unquestionably did not occur during the time period of count one—was the incident in which Sanders "showed" H.S. "the proper way to give a blow job" in the walk-in closet in her bedroom with the blinds closed. We do not believe any of the jurors in this case would have found that any of the vague incidents of sexual contact occurred during this time period without first being convinced this specifically detailed incident occurred.

¶ 40. Furthermore, the jury unanimously found Sanders guilty of count four, child enticement. The circuit court instructed the jury that child enticement "is committed by one who with intent to have sexual contact with the child in violation of [WIS. STAT. §] 948.02 causes any child who has not attained the age of 18 years *to go into any* vehicle, building, *room, or secluded place.*" (Emphasis added.) The oral sex incident in the walk-in closet was the only specifically

---

. . . .

> Sexual contact is also a touching by [H.S] of the penis of the Defendant, if the Defendant intentionally caused or allowed [H.S.] to do that touching . . . .
>
> Sexual contact also requires that the Defendant acted with intent to become sexually aroused or gratified.
>
> You cannot look into a person's mind to find intent. Intent must be found, if found at all, from the Defendant's acts, words, and statements, if any, and from all the facts and circumstances bearing upon intent.

In response to the jury's question, the court merely sent the jury a copy of the last paragraph of WIS JI—CRIMINAL 2101A, which is the last paragraph of the above indented quote. Approximately ten minutes after receiving this paragraph, the jury reached its verdict of not guilty on count one and guilty on counts two through four.

detailed sexual contact incident occurring during the time period of count four and the only incident upon which the jury reasonably would have founded that guilty verdict.[12] Thus, with the jury's guilty verdict on count four, it clearly appears the jury unanimously found that the oral-sex-in-the-walk-in-closet incident did in fact occur, as H.S. testified.

¶ 41.   Considering the entirety of the trial record, we are unconvinced that had an instruction such as WIS JI—CRIMINAL 517 been given to the jury, there is a reasonable probability the verdict on count three, the incest count, would have been any different, because we are convinced all twelve jurors must have found that the incestuous incident of oral sex in the walk-in closet did in fact occur.

*By the Court.*—Judgment and order affirmed.

¶ 42. REILLY, P.J. (*concurring*). I concur but not for the reasons set forth by the majority.[1] The legislature has placed jurisdictional limitations on the types of proceedings that may be brought against persons based upon their age. For example, if a person seventeen years of age or older commits a crime, that person is subject to criminal court jurisdiction, while if a person aged ten to seventeen years of age commits a criminal act, that person is subject to a delinquency petition under juvenile court jurisdiction.[2] *See* WIS.

---

[12] At sentencing, the circuit court commented:   "What the jury convicted you of was *the oral sex,* the sexual assault, that's what that is, child enticement, and the incest." (Emphasis added.)

[1] I join with the majority as to its discussion of the "incest count." *See* Majority, ¶¶ 30–41.

[2] Subject to numerous statutory exceptions and "waiver" provisions.

STAT. §§ 938.02(1), 938.12 (2015–16).[3] If a person under ten years of age engages in conduct that would be a delinquent/criminal act, that person is subject to a Child in Need of Protection and/or Services (CHIPS) petition under juvenile court jurisdiction. WIS. STAT. § 938.13(12).

¶ 43. In contrast to jurisdictional age limitations, we have our common law application of those jurisdictional age limitations. Jurisdiction of the court, whether juvenile or criminal, is determined by the person's age at the time of charging and not by the person's age at the time of their criminal/delinquent conduct. *State v. Annala*, 168 Wis. 2d 453, 463, 484 N.W.2d 138 (1992); Majority, ¶ 20. The State may reach down and pull what would have been a delinquency matter and bring it into criminal court so long as the state can show that it was not purposely manipulating the system to avoid juvenile court jurisdiction. *State v. Becker*, 74 Wis. 2d 675, 678, 247 N.W.2d 495 (1976) ("[W]hen the charging authorities have reason to believe that a child has committed an offense which, if committed by an adult, constitutes a crime, jurisdiction in a criminal court cannot be maintained on a charge brought after the child becomes eighteen, unless it is affirmatively shown that the delay was not for the purpose of manipulating the system to avoid juvenile court jurisdiction.").

¶ 44. My initial concern in this case was whether the law allows the state to pull what would have been a CHIPS petition up to criminal court jurisdiction. A CHIPS proceeding is not a criminal proceeding; it is civil in nature and its focus is on providing treatment

---

[3] All references to the Wisconsin Statutes are to the 2015–16 version unless otherwise noted.

and services to the child. *State v. Thomas J.W.*, 213 Wis. 2d 264, 266, 272–74, 570 N.W.2d 586 (Ct. App. 1997). A delinquency action is akin to a criminal court proceeding as the juvenile is subject to possible imprisonment and is entitled to many of the constitutional protections afforded to criminal defendants.[4] *See id.* at 274–76.

¶ 45. I write separately to express my concern that at some stage a child does not have the capacity to commit a crime, i.e., siblings, aged two and three, sharing a bath and playing "doctor" do not have the capacity to commit the crime of sexual assault of a child. The disturbed four year old who abuses animals and the five year old who likes to play with matches and burn things should be treated as children who need help rather than convicted and locked up as animal abusers or arsonists. The imprisonment of an adult for conduct the person engaged in when they were between the ages of one and nine years old strikes me as akin to punishing a puppy two days after the puppy had an accident in the house—the child/puppy has no idea why they were just struck and all they have learned is a fear of their master.

¶ 46. Under common law, children under the age of seven ("age of reason") were conclusively presumed to be without criminal capacity, while those who reached the age of fourteen were treated as fully responsible. 2 Wayne R. LaFave, *Substantive Criminal Law* § 9.6, at 62 (2d ed. 2003). The early common law defense of "infancy" was based on "an unwillingness to

---

[4] Miranda protections apply in juvenile delinquency and waiver proceedings as juveniles face exposure to "significant imprisonment or confinement in detention facilities." *State v. Thomas J.W.*, 213 Wis. 2d 264, 271–72, 570 N.W.2d 586 (Ct. App. 1997).

punish those thought to be incapable of forming criminal intent and not of an age where the threat of punishment could serve as a deterrent." *Id.* § 9.6(a) at 63. For persons between the ages of seven and fourteen, there was a rebuttable presumption of criminal incapacity. *Id.*

¶ 47.   While I could argue that the legislature has fixed the "age of reason" at greater than ten years of age by virtue of Wis. Stat. § 938.13(12), I acknowledge that our common law allows the state to bring a delinquency petition even when the child's bad conduct took place prior to the age of ten years. In *D.V. v. State*, 100 Wis. 2d 363, 302 N.W.2d 64 (Ct. App. 1981), the child, like Sanders, was in the CHIPS age category at the time of his delinquent conduct. *Id.* at 364. The state brought a delinquency petition against D.V. after he turned twelve.[5] *Id.* D.V. jurisdictionally challenged the delinquency petition arguing that any petition filed must be a CHIPS petition. *Id.* The court followed *State ex rel. Koopman v. County Court*, 38 Wis. 2d 492, 157 N.W.2d 623 (1968), in concluding that the age of the child at the time the delinquency petition is filed is jurisdictionally determinative rather than the age of the child at the time of the offending conduct. *D.V.*, 100 Wis. 2d at 366–67. If it is permissible for the state to pull a CHIPS category act into a delinquency petition, then there is no logical legal reason why the state cannot pull a CHIPS category act into a criminal complaint. Given *D.V.*, I must agree with the majority that Sanders' trial counsel did not provide ineffective

---

[5] D.V. was eleven at the time of his conduct, however, the delinquency age at the time of D.V.'s conduct was twelve years of age rather than today's ten years of age. *Compare D.V. v. State*, 100 Wis. 2d 363, 364–65, 302 N.W.2d 64 (Ct. App. 1981), *with* Wis. Stat. § 938.13(12).

assistance of counsel and the criminal court had jurisdiction over Sanders' pre-ten conduct. *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997).

¶ 48.  I do not join in the majority's characterization that the justices, judges, and legislators of this state have mistakenly used the term "jurisdiction" instead of "competency." Majority, ¶¶ 17, 23. A circuit court is a court with general jurisdiction to hear all matters, civil and criminal, within this state, and has "original jurisdiction" over all criminal cases. *State v. Fischer*, 175 Wis. 69, 71–72, 184 N.W. 774 (1921); *Allen v. State*, 5 Wis. 329, 334 (1856). "Subject matter jurisdiction is the power of the court to determine the facts, apply the law and set the penalty." *State v. Asmus*, 2010 WI App 48, ¶ 4, 324 Wis. 2d 427, 782 N.W.2d 435. As long as a complaint alleges that a crime has been committed, a circuit court has subject matter jurisdiction regardless if a criminal statute can be applied to the facts involved. *State ex rel. McCaffrey v. Shanks*, 124 Wis. 2d 216, 231, 369 N.W.2d 743 (Ct. App. 1985). There is no discussion in *Koopman*, *D.V.*, *Annala*, or *State v. LeQue*, 150 Wis. 2d 256, 442 N.W.2d 494 (Ct. App. 1989), of "competency." We on the court of appeals do not have "the power to overrule, modify or withdraw language from" prior published decisions so as to change the word "jurisdiction" to "competency," *see Cook*, 208 Wis. 2d at 189, and to the extent the majority so asserts, I do not join.